UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JEFFERY A. WOODS, | ) | CASE NO. 4:07 CV 68 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| K. FREDERICK, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On January 10, 2007, pro se plaintiff Jeffrey A. Woods filed this action under 42 U.S.C. § 1983 on behalf of himself and inmates Mark Ferrill, Thomas C. Jenkins, Marlin Mitchell and Danny Caudill against Trumbull Correctional Institution ("TCI") Institutional Inspector K. Frederick, Ohio Department of Rehabilitation and Correction ("ODRC") Director Terry Collins, TCI Warden D. Bobby, TCI Corrections Officer Lt. Gant, TCI Quartermaster Douglas, TCI Physician Dr. Barrick, TCI Corrections Officer Lt. R. Pratt, TCI Employee Robbyn Ware, Correctional Medical Services ("CMS") Vice President Garg McWilliams, CMS Physician Dr. Augustine, CMS Physician James Kline, ODRC Chief Inspector Cheryl Jorgensen-Martinez, ODRC Assistant Chief Inspector Hugh Daley, ODRC Assistant Chief Inspector Gary Croft, TCI Corrections Officer John Doe #1, TCI Acting Deputy Warden John Doe #2, TCI Corrections Officer John Doe #3, TCI Acting Institutional Inspector John Doe #4, TCI Institutional Inspector

John Doe #5. The complaint contains multiple claims regarding conditions of confinement. He seeks monetary damages in the amount of $ 20,000,000.00.

**Background**

As an initial matter, Mr. Woods purports to file this action on behalf of himself and four other inmates. Some of the claims of these other inmates have no connection to Mr. Woods. In general, a party may plead and conduct his or her case in person or through a licensed attorney. See 28 U.S.C. § 1654; Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991).[1] An adult litigant who wishes to proceed pro se must personally sign the complaint to invoke this court's jurisdiction. See 28 U.S.C. § 1654; Steelman v. Thomas, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988). Only Mr. Woods's signature appears on the pleading. There is no indication that Mr. Woods is a licensed attorney authorized to practice law. He is therefore unable to represent Mr. Ferrill, Mr. Jenkins, Mr. Mitchell and Mr. Caudill in this or any other action. The only claims properly before this court are those of Jeffery A. Woods. This court will discuss and address only those claims.[2]

---

[1] 28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

[2] Specifically, the complaint contains claims pertaining to Mr. Caudill's right to receive inmate assistance to file his habeas corpus petition, Mr. Ferrill's right to receive inmate legal assistance, Mr. Ferrill's alleged denial of proper dental and medical treatment, Mr. Mitchell's denial of appropriate hot meals, and Mr. Jenkins's denial of mail from his wife. These claims will not be discussed or considered.

Mr. Woods alleges he was transferred to TCI in Nov. 2004. In December 2004, Lake Erie Correctional Institution inmate, Danny Caudill, mailed a package of legal documents to Mr. Woods at TCI asking for his assistance in correcting and filing them with the appropriate federal court. The package was rejected by the TCI mail room staff as contraband. Mr. Woods was told inmates were not permitted to exchange property between institutions. Another inmate at Lake Erie Correctional Institution attempted to send a package of documents to Mr. Woods in the hope of receiving legal assistance from him in April 2005. That package was also rejected by TCI as contraband. Mr. Woods contends that these actions violated his rights under the First, Eighth and Fourteenth Amendments.

Mr. Woods also claims he was not promptly provided with a pair of boots in 2004. He claims he kited the TCI quartermaster on November 17, 2004, stating that he had just arrived at the institution and was not issued a pair of boots. He was given a pass to the quartermaster's office; however, when he arrived on December 6, 2004, the office was closed. He claims his pass was not re-issued and he was unable to obtain boots until the spring of 2005. He contends that this is a violation of the Eighth Amendment.

Mr. Woods then describes an incident he experienced during a visitation in May 2005. He indicates that he was visiting with his family when he decided he needed to use the restroom. He asked one of the corrections officers for permission to leave the area and was told that the count was being taken and no inmates were permitted to move around the building during the count. He indicates that he challenged the rationale for denying his request and a verbal altercation ensued. Mr. Woods claims the corrections officer became verbally abusive and used racial slurs. He challenged the officer's language and was taken to segregation. He was charged with causing

a disruption. Although he denied the charges, he was found guilty at his Rules Infraction Board Hearing and was given ten days in the segregation unit. Mr. Woods claims the John Doe Corrections Officer and Deputy Warden Robbyn Ware violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to substantive due process.

Finally, Mr. Woods claims he was denied two hot meals per day for a thirty day period of time. He states that on October 2, 2006, the inmates were informed that the cafeteria would be closed for thirty days while the floor was being replaced. He states that for one month, inmates were served a bagged meal for breakfast, a hot meal for lunch and a bagged meal for dinner. Mr. Woods includes menus from this time period which suggest that breakfast consisted generally of 2 hard boiled eggs, 1 bowl of cereal, 1 muffin or danish, 1 orange juice and 2 milk cartons. Lunch typically consisted of 2 hamburgers or 2 hot dogs, condiments, 1 fruit cup, one piece of cheese, a small pasta salad, macaroni salad or potato salad, baked beans, and a beverage. Dinner was generally a deli sandwich, a bag of potato or corn chips, a fig bar, a graham cracker and two beverages. Mr. Woods refers to his meals as "Happy Meals made for children" which do not comply with the USDA dietary guidelines for Americans. He contends that ODRC policy requires inmates to be served two hot nutritionally balanced meals during a 24 hour period. He claims he was hungry one hour after eating his evening meal. He asserts that the defendants were deliberately indifferent to his dietary needs in violation of the Eighth and Fourteenth Amendments.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is

4

required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

**Parties**

The court first notes that several of the defendants were named only in claims which pertain to Mr. Ferrill or Mr. Jenkins.  Defendants Garg McWilliams, Dr. Augustine, Dr. Barrick, and James Kline were included in this action because they provided medical treatment to Mr. Ferrill.  John Doe #3 is alleged to have interfered with Mr. Jenkins mail from his wife.  As noted above, these claims are not properly before the court.  Consequently Dr. Augustine, Dr Barrick, James Kline, Garg McWilliams and John Doe #3 are dismissed from this action.

In addition, Mr. Woods fails to state a cognizable claim against  TCI Institutional Inspector K. Frederick, ODRC Chief Inspector Cheryl Jorgensen-Martinez, ODRC Assistant Chief Inspector Hugh Daley, ODRC Assistant Chief Inspector Gary Croft, TCI Acting Institutional Inspector  John Doe #4, TCI Institutional Inspector John Doe #5.  These individuals are named as defendants solely because they did not rule favorably on Mr. Woods's grievances.  Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger

---

[3] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999). As plaintiff has failed to allege facts to reasonably indicate these defendants engaged in other type of activities which violated his Constitutional rights, they are also dismissed from this action.

**First Amendment**

Mr. Woods's claims are also without merit. He first asserts that defendant Gant violated his First Amendment rights by refusing mail from other correctional institutions which was sent to Mr. Woods by inmates seeking to obtain legal advice. Inmates do not possess an independent right of access to the courts to help others with their legal claims. Thaddeus-X v. Blatter, 175 F.3d. 378, 395 (6th Cir. 1999). An inmate's ability to assist another prisoner is wholly derivative of the inmate/client's right. Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993). While an inmate's legal assistance to another inmate, under some circumstances may be protected conduct for purposes of a retaliation claim, there are no allegations here which reasonably suggest that the letter was rejected in order to retaliate against Mr. Woods for assisting Mr. Caudill. That would leave Mr. Woods's claim to fall within the parameters of his general right under the First Amendment to receive mail. An inmate retains those First Amendment rights which are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the penal system. Turner v. Safley, 482 U.S. 78, 89 (1987). Mr. Woods indicates that the packages were rejected as contraband because the prison has a policy which bans all inmate to inmate correspondence between different institutions. Such a regulation has already been upheld by the United States Supreme Court as promoting a legitimate penological objective. See Id. at 89.

**Eighth Amendment**

Mr. Woods also includes several claims under the Eighth Amendment. In addition

to stating that the refusal of mail coming from other prisons violated the Eighth Amendment, he contends that the delay in providing him with boots in 2004, a guard's use of derogatory language during a verbal altercation in the visitation area in 2005, his placement in segregation for ten days for creating a disruption, and the failure to provide two hot meals per day for thirty days while the cafeteria was being remodeled violated the Eighth Amendment.

An Eighth Amendment claim is stated where a prisoner is denied the minimal level of some element of civilized human existence due to deliberate indifference or wantonness. Wilson v. Seiter, 501 U.S. 294 (1991); see Hudson v. McMillian, 503 U.S. 1 (1992); Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir.1996).  In sum, this prong of the Eighth Amendment affords protection against conditions of confinement which constitute imminent and serious health threats, but not against those which cause mere discomfort or inconvenience. Hudson, 503 U.S. at 9-10 (requiring extreme or grave deprivation). The types of conduct the plaintiff describes are, at best, inconveniences associated with ordinary prison life.  He has not alleged a deprivation which triggers Eighth Amendment scrutiny.

**Fourteenth Amendment**

Finally, Mr. Woods asserts that the same actions deprived him of substantive due process.  There are two types of substantive due process claims.  The first type includes claims that involve official acts which are unreasonable, arbitrary and cause a deprivation of a substantive right specified in the Constitution or a federal statute. Mertik v. Blalock, 983 F.2d 1353,1367 (6th Cir. 1993); Parate v. Isibor, 868 F.2d 821, 831 (6th Cir. 1989).  Mr. Woods has not alleged facts to suggest a deprivation of a substantive liberty or property interest guaranteed by the Constitution or by statute.  The other type of substantive due process claim is directed at official acts that "so shock

7

the conscience" that they are unconstitutional regardless of the procedural protections provided. Parate, 868 F.2d at 832. A citizen does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent. Id. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." Id. There are no facts presented in plaintiff's complaint to suggest the defendants' actions met this extreme standard.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Perter C. Economus - 4/18/07
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE